IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| ANGELA ANNETTE STALLINGS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-17-106-BMJ |
|  | ) |  |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Angela Annette Stallings, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's final decision finding she was not disabled under the Social Security Act. The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR), and both parties have briefed their respective positions.[1] For the reasons stated below, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.     Procedural Background**

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI), alleging disability beginning December 16, 2009. AR 14, 265-74. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated March 25, 2011. AR 17-29. The Appeals Council then granted Plaintiff's request for review and remanded the matter for further proceedings. AR 130-32. On January 25, 2016,

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

the ALJ again issued an unfavorable decision. AR 11-27. The Appeals Council then denied Plaintiff's request for review. AR 1-3. Therefore, the ALJ's January 25, 2016 decision constitutes the final decision of the Commissioner. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

**II.     The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining process); *see also* 20 C.F.R. §§ 404.1520, 416.920. The ALJ first determined that Plaintiff meets the insured status requirements of the Act through December 31, 2014, and has not engaged in substantial gainful activity since the alleged onset date, December 16, 2009. AR 17.

At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease with spondylolisthesis of L4-5 and radiculopathy, status post L4-5 decompression and fusion in December 2014, hypertension, and obesity. *Id*. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 20-21.

The ALJ next determined Plaintiff's residual functional capacity (RFC). The ALJ concluded Plaintiff could perform sedentary work[2] "except lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; stand and walk for 2 out of 8 hours; sit for 6 out of 8 [hours,] no climbing ladders, ropes or scaffolds; no balancing; occasionally climb stairs and ramps; occasional kneel, crouch, crawl, and stoop; and change position in job area while performing job tasks." AR 22.

---

[2] *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (setting forth requirements for sedentary work).

At step four, the ALJ found that Plaintiff could perform her past relevant work as a customer service representative. AR 26. The ALJ concluded, therefore, that Plaintiff was not disabled under the terms of the Social Security Act. AR 27.

### III. Issue Presented for Judicial Review

Plaintiff seeks judicial review raising three claims of error: (1) the ALJ failed to properly follow the treating source/physician rule when addressing the opinion of Susan Hakel, M.D.; (2) the ALJ failed to properly assess Plaintiff's RFC and the ALJ's RFC findings are not supported by substantial evidence; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. For the reasons set forth below, the Court finds Plaintiff's first and third claims of error have merit, necessitating a remand. Therefore, the Court deems it unnecessary to address the second claim of error which might be affected by proceedings on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). The Court further denies Plaintiff's request for an immediate award of benefits. Further fact-finding is required at the administrative level.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).

A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the

substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

Plaintiff bears the burden of proof at steps one through four of the sequential evaluation process to establish a prima facie case of disability. *Wells v. Colvin*, 727 F.3d 1061, 1064 n. 1 (10th Cir. 2013). If Plaintiff meets this burden, the burden of proof shifts to the Commissioner at step five to show that Plaintiff retains a sufficient RFC to perform other work that exists in significant numbers in the national economy. *Id*.

## V. <u>Analysis</u>

### A. The ALJ's Weighing of Dr. Hakel's Opinion

Dr. Hakel treated Plaintiff during the time period January 2008 through April 2012. AR 429; *see also* AR 669-670. She initially diagnosed Plaintiff with chronic low-back syndrome. AR 427. Plaintiff underwent a series of epidural steroid injections while under Dr. Hakel's care. AR 426; *see also* AR 423. Additionally, an MRI during that period of time revealed "severe deterioration of the L4-5 disk with anterolisthesis of L4 on L5 and severe compromise of both neural foramina." *Id*.; *see also* AR 433, 435, 464, 481, 698. Dr. Hakel recommended that Plaintiff be evaluated by a neurosurgeon, Dr. Emily Friedman, as to the feasibility of surgical intervention. *Id*. Dr. Hakel observed in this regard that "we can only expect the back pain to get inexorably worse if we do nothing but conservative management[.]" *Id*.

In August 2009, Dr. Hakel opined that Plaintiff would need certain accommodations at work including a heating pad at her desk, "frequent (hourly) short breaks to get up and walk

around" and that Plaintiff would not be able to work overtime hours. AR 571. She further opined that sitting all day would cause pain flare ups and would, in turn, necessitate Plaintiff missing "1-2 days each week." AR 570.

> Addressing Dr. Hakel's opinion, the ALJ made the following findings:
>
> Dr. Hakel provided *no standing or sitting limitations*. She provided that the claimant was unable to sit for prolonged periods, but prolonged periods is not defined. The provision that the claimant was likely to be absent frequently, needed to take frequent breaks, and was unable to work overtime *was inconsistent with other evidence in the record, the evidence of the State agency reviewing physicians that opined that the claimant could perform light work. This opinion was not substantiated by medical signs in the record.*

AR 25 (emphasis added). The ALJ then "assigned greater weight to the opinions of the State agency reviewing physicians that had the opportunity to *review the longitudinal record*." *Id*. (emphasis added). Consequently, the ALJ assigned "little weight" to Dr. Hakel's opinion. *Id*.

The ALJ then noted that in March 2010, Robin Hall, M.D., performed a consultative examination of Plaintiff and "provided *no functional limitations*." *Id*. (emphasis added). The ALJ did not state the weight given to Dr. Hall's opinion.[3]

The ALJ next discussed the June 2010 physical RFC assessment by state agency physician Carmen Bird, M.D. *Id*. Dr. Bird opined that Plaintiff could perform "in a range of light work." *Id*.; *see also* AR 25-26. Specifically, Dr. Bird opined that Plaintiff "could perform light work with frequently climb [sic] ramps or stairs, ladders, rope and scaffolds and frequently balance." AR 25-26 (*citing* AR 448-455). The ALJ also addressed the August 2010 opinion of State agency physician Walter W. Bell, M.D. The ALJ noted that Dr. Bell stated he had "reviewed all of the medical evidence and he concurred with Dr. Bird's opinion." AR 26 (*citing* AR 480).

---

[3] The ALJ, however, included numerous functional limitations in the RFC. Thus, it appears the ALJ gave little weight to Dr. Hall's consultative examination.

5

The ALJ concluded that the opinions of the State agency physicians, Dr. Bird and Dr. Bell, were "well-supported" by the evidence of record" and therefore "assigned greater weight to the opinions of the State agency reviewing physicians that had the opportunity to review the longitudinal record." *Id*. But the ALJ then stated that although she assigned great weight to these opinions, she "provided greater limitations given consideration of the evidence provided at the hearing, including consideration of a surgery and consideration of obesity." *Id*.

1. **Governing Law**

A sequential, two-step inquiry governs an ALJ's evaluation of the medical opinions of a claimant's treating physician. *Krauser*, 638 F.3d at 1330. The two-step inquiry is mandatory and each step of the inquiry is "analytically distinct." *Id*. at 1330. First, the ALJ must decide whether the opinion is entitled to "controlling weight." If the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," then the opinion must be given controlling weight. *Id*. A deficiency in either of these areas requires that the opinion not be given controlling weight. *Id*.

When a treating physician opinion is not entitled to controlling weight, the inquiry does not end. The opinion is still entitled to deference. Thus, at the second step of the inquiry, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id*. As the Tenth Circuit has made clear: "[i]f this is not done, a remand is required." *Id*. The relevant factors governing the second step of the inquiry include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported

by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id*. at 1331 (citation omitted).

The treating physician rule is founded on the treating physician's unique perspective to the medical evidence due to both the duration and frequency of the treatment relationship. *Doyal*, 331 F.3d at 762. The rule "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Id*. (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (addressing weight given to treating source due to his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). As a general matter, the greatest weight is given to the treating physician's opinion, with less to the examining physician and even less to an agency physician. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

2. **Analysis**

The ALJ determined Dr. Hakel's opinion was not entitled to controlling weight. The ALJ's reasons for not giving controlling weight to Dr. Hakel's opinion are not supported by substantial evidence. First, the ALJ erroneously states the Dr. Hakel provided no standing or sitting limitations. This finding is readily contradicted by Dr. Hakel's express finding that Plaintiff would need frequent breaks – identified as "hourly" – to get up and walk around. Such a finding is a limitation on Plaintiff's ability to sit.

7

Second, the ALJ deemed Dr. Hakel's opinion was inconsistent with the opinion of the State agency consultants that Plaintiff could perform light work. It is well-established, however, that "[t]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the view of consulting physicians or those who only review the medical records and never examine the claimant." *Robinson*, 366 F.3d at 1084 (internal quotations marks and citations omitted). As non-examining consultants, Dr. Bird's and Dr. Bell's "review of the record was not itself a proper basis for according [their] opinion[s] greater weight than those of the other examining sources." *Kellams v. Berryhill*, 696 F. App'x 909, 920 (10th Cir. 2017) (*citing Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

Additionally, in making this finding, the ALJ ignored other substantial evidence in the record consistent with Dr. Hakel's opinion. For example, the ALJ failed to address consistent evidence from Emily D. Friedman, M.D., a treating neurosurgeon, and Donald E. Adams, M.D., also a treating physician. In August 2009, Dr. Friedman's treatment records reflect straight leg raising exam was "[p]ositive on the right for nerve root tension." AR 466. Approximately one year later in July 2010, Dr. Friedman noted that Plaintiff was "definitely a candidate for surgery" and one month later recommended use of a TENs unit for Plaintiff. AR 456, 486. In November 2010, Dr. Friedman obtained results from a new MRI and noted progression in her "grade I slip at L4-L5" since Plaintiff's last MRI in 2008, in addition to disc herniation and "severe foraminal stenosis," which Dr. Friedman stated "explains [Plaintiff's] leg pain," AR 481.

Dr. Adam's treated Plaintiff in July 2012 and noted Plaintiff's restricted range of motion in her lumbar spine, "discomfort on right lateral sidebending and symptom exacerbation on forward flexion." AR 505. He also observed "significant tenderness to palpation in the lower aspects of the lumbar spine with tenderness to palpation primarily at the lumbosacral junction."

8

*Id*.  Dr. Adams continued to see Plaintiff throughout 2012 and 2013 and his diagnoses included lumbar radicular pain and chronic pain syndrome, for which he prescribed pain medications to Plaintiff.  AR 506-07, 509-10, 512-513.

The ALJ summarized the medical evidence and referenced treatment provided by Dr. Friedman and Dr. Adams.  AR 18, 19.  But the ALJ failed to explain how the opinions set forth in their treatment records were inconsistent with the findings of Dr. Hakel.  Thus, it appears that in the context of the ALJ's RFC findings, the ALJ engaged in impermissible picking and choosing from the record.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (An ALJ need not "discuss every piece of evidence" but "must discuss the uncontroverted evidence he chooses not to rely on as well as significantly probative evidence he rejects.").

The ALJ further erroneously states that Dr. Hakel's opinion was not substantiated by medical signs in the record.  Contrary to the ALJ's finding, Dr. Hakel's opinion is supported by the MRI referenced in her treatment records.  Dr. Hakel's opinion is also supported by her own treatment and observations of Plaintiff.

The ALJ's decision to give greater weight to the opinions of the State agency physicians is also not supported by substantial evidence.  The ALJ states that the state agency physicians had the opportunity to review the "longitudinal record."  AR 25.  The ALJ cites no evidence to support this statement.  *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (finding remand required where "the ALJ failed to explain or identify what the claimed inconsistencies were between [the treating physician's] opinion and the other substantial evidence in the record," and concluding that the ALJ's reasoning was not "sufficiently specific to enable this court to

9

meaningfully review his findings") (quotation omitted). Here, as in *Langley*, upon an independent review of the record, the Court is unable to identify any obvious inconsistencies to which the ALJ might have been referring.[4] Notably, Dr. Bird and Dr. Bell rendered their opinions within one year of Dr. Hakel's opinion. The medical record during that period demonstrates Plaintiff's diagnoses and symptoms remained consistent with Dr. Hakel's findings and treatment.

Additionally, the ALJ did not explain why Dr. Hakel's treatment history was insufficient. Dr. Hakel, as a treating physician, had a significant longitudinal *treating history* that spanned a period of over a year and a half at that time she rendered her opinion as to Plaintiff's functional limitations. Yet, the ALJ credited the State agency physicians' opinions based on a longitudinal *review of the record only*. The ALJ acted contrary to the governing regulations. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (Generally, we give more weight to medical opinions from your treating sources, *since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations* or brief hospitalizations.") (emphasis added).

Finally, the ALJ failed to address how Dr. Hakel's opinion was inconsistent with the treatment records of Plaintiff's other treating physicians, Dr. Friedman and Dr. Adams, as discussed above. Without express analysis by the ALJ, it is not possible to ascertain her reasons for giving greater weight to the opinions of the agency physicians and this Court cannot conduct a meaningful review of the ALJ's decision. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th

---

[4] Indeed, the ALJ rejected the opinions of the State agency physicians that Plaintiff could perform light work.

Cir. 2001) ("[W]hen . . . an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination."). For all these reasons, a remand is required.

### 3. The ALJ's Error is Not Harmless

The Commissioner argues that any error in the ALJ's weighing of the medical evidence is harmless because the ALJ included a "sit/stand" option in the RFC. The Commissioner states:

> The ALJ also included an additional limitation: that Plaintiff should be allowed to change position in the job area while performing job tasks (*i.e., that she have a sit/stand option in that she should be allowed to sit or stand at will*) ([AR]22). In other words, the ALJ found that Plaintiff could perform a full range of sedentary work as long as she had the option to sit or stand at will while performing it.

*See* Def.'s Br. at p. 5 (emphasis added).

To the contrary, the RFC states that Plaintiff can "stand and walk for 2 out of 8 hours," "sit for 6 out of 8 [hours]" and "change position in job area while performing job tasks." AR 21-22. Perhaps the Commissioner chose to recharacterize the RFC – rather than to address it as written – due to the testimony of the vocational expert (VE).

At *best*, the VE equivocates about whether Plaintiff's past relevant work can be performed with a "sit/stand" option. *See* AR 99-101. Significantly, the VE testified that Plaintiff's past relevant work could not be performed "[i]f an individual . . . needed to stand and shift around in terms of the work site." AR 99. As the VE explained, "it would be difficult to perform [the job] because you pretty much have to stay at a seated position working the job until you have a break." AR 99-100.[5] Under these circumstances, and because Dr. Hakel opined Plaintiff would need

---

[5] The ALJ modified the inquiry, referencing accommodation with an "adjustable table[] that their computer is on," *see* AR 100, and stating that "by changing position, I mean they can sit. They can stand. They can shift around in their chair, but they're still in their work area. *And they're still doing their work*. *See id*. (emphasis added). The VE testified that "[w]ith that clarification,

11

hourly breaks to get up and walk around, the Commissioner's harmless error argument lacks merit. *See Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is *no inconsistency* between the opinion and the ALJ's assessment of residual functional capacity,") (emphasis added); *see also Keyes-Zachary v*. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012) (an ALJ's failure to weigh a medical opinion amounts to harmless error if the opinion is "generally consistent" with the RFC determination); *Fischer-Ross*, 431 F.3d at 734 (harmless error finding is appropriate only when the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." (quotation omitted)).

### B. The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff also claims the ALJ failed to properly evaluate her credibility and that the ALJ's findings related thereto are not supported by substantial evidence. The Court agrees.

Here, as the ALJ found, Plaintiff's impairments can reasonably be expected to produce pain and other symptoms. AR 24. Thus, the ALJ was required to give consideration to Plaintiff's subjective complaints. *See* 20 C.F.R. §§ 404.1529(c); 416.929(c); *see also* SSR 96-7p, 1996 WL 374186 at *1 (July 2, 1996).[6]

---

they can still perform the job." *Id*. But the VE further testified that the type of additional functional limitations included in Dr. Hakel's opinion would preclude performance of Plaintiff's past relevant work. AR 101, 104. Because, the ALJ's hypothetical, characterized by the Commissioner as a "sit/stand" option, is more narrow, and due to the equivocation in the testimony, any error is not harmless. Significantly, the ALJ's hypothetical assumes that although the person could still "change position," nonetheless, "they're still doing their work." AR 100. Dr. Hakel, to the contrary, opined that Plaintiff would need "frequent (hourly) short breaks *to get up and walk around*." AR 571 (emphasis added).

[6] The ALJ cited SSR 96-7p in her decision. AR 22. SSR 96-7p has been rescinded and replaced with SSR 16-3p, a ruling that eliminates the term "credibility" and provides new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *See* SSR 16-

The ALJ stated that she considered Plaintiff's testimony "but noted several inconsistencies." AR 24. The ALJ made the following findings:

● "The claimant testified she *has not* used a computer for personal use since December 16, 2009, she denied using her laptop that was at her house five years ago, and she said she has not used a computer because she testified she was 'computer illiterate.' (citation omitted) This was inconsistent with written statements in the work history report that she used a computer as a customer service representative at Hertz. She has an email account."

● "She testified that she does not have a social life. She said that her mother visits her. She said that she does not go to visit others and she said she had never visited anyone else since December 2009, yet this was inconsistent with her testimony that she drove to Tulsa to visit her father. (citation omitted). The claimant testified that she attends church once a month."

● "The claimant alleged adverse side effects of pain medication. Taking a medication that causes side effects of the degree alleged is inconsistent with the continued use of this medication. It is the rare case in which a patient must take a medication that causes severe side effects but has no alternative. Generally, if the patient is experiencing such side effects the doctor will attempt to remedy this by prescribing an alternative."

● "The claimant underwent a L4-5 decompression and fusion on December 30, 2014. . . . Progress notes from Dr. Braley, M.D., on June 15, 2015 indicated the claimant was doing well, with no recurrence of leg or back pain."

---

3p, 2016 WL 1119029 (Mar. 16, 2016). The Social Security Administration (SSA) recently republished SSR 16-3p "with a revision detailing how [to] apply the SSR as it relates to the applicable date." SSR 16-3p, 2017 WL 5180304 at *1 (Oct. 25, 2017). SSR 16-3p is applicable on March 28, 2016. *Id*. at *13. "If a court finds reversible error and remands a case for further administrative proceedings after March 28, 2016" the SSA "will apply [SSR16-3p] to the entire period at issue in the decision [the SSA] make[s] after the court's remand." *Id*. at *13, n. 27. On remand, therefore, the ALJ should consider SSR 16-3p in evaluating Plaintiff's credibility. SSR 16-3p clarifies that "subjective symptom evaluation *is not an examination of an individual's character*." *Id*. at *2 (emphasis added). Thus, adjudicators are instructed to "*not* assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation" and, therefore, the "[f]he focus of the evaluation *should not be* to determine whether he or she is a truthful person. *Id*. at *11 (emphasis added).

- "The claimant applied for and received unemployment benefits from 2010 and 2011. . . . The receipt of unemployment benefits require the applicant to certify that they are ready, willing and able to work."

AR 24.

The ALJ mischaracterized the evidence in finding claimant's testimony "inconsistent." Plaintiff testified that she had a home laptop "about five years ago" but that she no longer had a computer at home. AR 80. When asked if she ever used that computer, she said "[n]o" because she was "actually computer illiterate." *Id*. She said she had a cell phone with "activated Internet access" and an email account. *Id*. The ALJ found this testimony inconsistent with her "work history report that she used a computer as a customer service representative at Hertz." AR 24. But as Plaintiff argues, "[c]ertainly, being able to log into an employer's computer system and input data into said system does not mean the person is computer literate." *See* Pl.'s Br. at p. 22. In any event, nothing about Plaintiff's testimony shows she was misrepresenting the fact that she did not have a personal computer. Moreover, nothing about that testimony demonstrates her subjective complaints concerning her pain-producing symptoms are not credible.

The ALJ also mischaracterizes Plaintiff's testimony when finding she gave inconsistent testimony about "visits." The ALJ specifically asked Plaintiff: "[H]ave you left the [C]ity of Oklahoma City for any reason since December 16, 2009 through today?" AR 73. Plaintiff responded "[y]es" and testified that she took "[o]ne trip to Tulsa, Oklahoma" for the purpose of visiting her father. AR 73-74. After asking several intervening questions, the ALJ then specifically asked Plaintiff: "Do people come visit you? Again, our start date is December 16, 2009 through today." AR 80. Plaintiff answered that her mother comes to visit her. *Id*. The ALJ followed with the question: "Do you go visit other folks?" and Plaintiff answered: "No. I don't have a social life anymore." AR 81. The ALJ then said: "Well, I'm not just talking about a social

14

life. I'm talking about have you gone to family or friends. Have you gone to someone else's house for a holiday?" *Id*. Plaintiff responded that she had not. *Id*. Plaintiff's response was not inconsistent with her prior testimony about *travel*. And Plaintiff reasonably could have understood the ALJ was inquiring about in-town visits due to the fact that she had already discussed her out-of-town travel to visit her father. Indeed, Plaintiff further clarified her answer that she did not visit friends or family stating: "[n]o . . . it's just my mother and my two son[s] and my niece. It's my whole family, no." *Id*. Her testimony reflects she understood the ALJ to be discussing whether she visited with friends or family *in town*. Indeed, the ALJ began the line of inquiry asking whether other people *came to visit Plaintiff*. AR 80. For all these reasons, the ALJ mischaracterized this line of Plaintiff's testimony as inconsistent.[7]

The ALJ's findings regarding Plaintiff's continued use of pain medication despite its side effects is based on pure conjecture and speculation. This finding, therefore, is not based on substantial evidence.[8]

It is unclear why the ALJ discounted Plaintiff's subjective complaints based upon her post-surgical improvement. To the extent the ALJ implicitly found that Plaintiff refused treatment, the record does not support that finding. From her onset date and up to the time of her surgery, Plaintiff continued to seek conservative treatment through physical therapy, steroid injections and pain medications, hoping to avoid surgical intervention. The record reflects she was concerned about

---

[7] The ALJ also referenced Plaintiff's once-a-month church attendance as grounds for discounting her credibility. But this type of minimal, intermittent activity is an insufficient basis upon which to discount a claimant's credibility. *See generally Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987).

[8] Moreover, contrary to the ALJ's speculative statements, the medical record reveals that Plaintiff frequently sought changes in medications when the medications were not satisfactory. *See, e.g.*, AR 549-50, 551-55.

15

the risks associated with surgical intervention and even Dr. Friedman advised that Plaintiff "max out all conservative modalities first." AR 441, 671. Moreover, the surgery was performed on December 30, 2014 – one day prior to Plaintiff's date last insured. Thus, to the extent Plaintiff's condition improved, that fact does not negate the symptoms she continuously experienced for the five-year period prior to the surgery indicating that she suffered from those symptoms for at least a period of disability.

Finally, the ALJ discounted Plaintiff's testimony based on her receipt of unemployment benefits. The ALJ found that to receive unemployment benefits, a person must certify that she is ready, willing and able to work. AR 24.[9] This factor appears to be a proper basis upon which to assess Plaintiff's credibility. *See, e.g., Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) (receipt of credibility benefits is a relevant credibility factor because "[t]here is an obvious inconsistency between claiming an ability to work for purposes of obtaining unemployment compensation and claiming an inability to work for purposes of obtaining social security benefits").

For the reasons set forth, however, the *balance* of the ALJ's credibility analysis is based on a mischaracterization of the evidence or otherwise not supported by substantial evidence. *Cf. Branum*, 385 F.3d at 1274 (finding substantial evidence supported ALJ's credibility determination where "the balance of the ALJ's credibility analysis [was] supported by substantial evidence in the record"). Therefore, the ALJ's credibility findings are not entitled to deference. *See Krauser*, 638 F.3d at 1332 (deference to a credibility finding is not required where "specific facts behind the generalities pain a very different picture" than that characterized by the ALJ); *see also Sitsler v.*

---

[9] The ALJ did not question Plaintiff about the latter, but asked her only if she had received benefits and for what period of time. AR 69.

16

*Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011) ("[A]n ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations.") (*citing Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 742–43 (10th Cir.1993) (ALJ took claimant's testimony out of context, selectively acknowledged only parts of her statements, and presented his findings as accurate reflections of her statements). Therefore, a remand is required. *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (reversing where "the ALJ's evaluation of plaintiff's subjective complaints was flawed by his reliance on factors that were not supported by the record). On remand, the ALJ is directed to properly evaluate the evidence with respect to Plaintiff's credibility and address her credibility in the manner directed by SSR 16-3p.

## VI.     An Immediate Award of Benefits is Not Warranted

Plaintiff asks that the Court remand this matter and direct an immediate award of benefits. She relies on the fact that she has had two administrative hearings, one remand by the Appeals Council and now, review by this Court. A remand for an immediate award of benefits "is appropriate when the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989). Factors the Court may consider include the length of time the matter has been pending and whether a remand for additional fact-finding would serve any useful purpose or would merely delay the receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

The Court has found a remand is necessary because the ALJ did not properly support her findings regarding the weighing of the medical evidence and the ALJ mischaracterized evidence in assessing Plaintiff's credibility. Further assessment of the facts, utilizing the proper legal framework, is warranted. Although the Court recognizes the case has been pending for several years, under the circumstances, an immediate award of benefits is not warranted. Remand for

additional analysis is appropriate as the current record does not fully support a determination that Plaintiff is disabled as a matter of law.

## VII. Conclusion

For the reasons set forth, the Court reverses the decision of the Commissioner and remands the matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's request for an immediate award of benefits is denied.

ENTERED this 20th day of November, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE